## Twinn v. Noble.

*Personal injuries—Contributory negligence—Case for jury.*

1. Plaintiff testified that he attempted to cross Broad Street from east to west at the southeast corner of Lehigh Avenue; just as he was leaving the sidewalk, he looked south and saw the lights of an automobile 300 feet away; he stepped into the cartway and, when from six to eight feet from the safety platform in the middle of the street, which divides vehicular traffic running north and south, he heard a buzzing sound to his left, and upon looking saw the lights of an automobile about twenty feet away. He was startled into a momentary stop: he then jumped toward the safety platform, but was struck by the automobile and sustained grievous permanent injuries. The driver did not sound his horn, but, nevertheless, through some defect of the engine, according to one of plaintiff's witnesses, it made a noise which could be heard from 150 to 175 feet away. The jury brought in a verdict for $30,000. On motion for new trial: *Held,* that the questions of defendant's negligence and plaintiff's contributory negligence were for the jury, and new trial refused.

*Personal injuries—Dismissal of petition for medical examination—Appeal pending—Continuance.*

2. A continuance will not be granted in an action for personal injuries upon the ground that an appeal is pending in the Supreme Court from the action of the Court of Common Pleas in dismissing a petition by defendant for a medical examination of plaintiff.

*New trial—Dismissal of petition for medical examination—Offer by plaintiff to permit medical examination on condition that defendant's experts be called if favorable to plaintiff.*

3. Where, notwithstanding the refusal by the court of defendant's petition for a compulsory medical examination of plaintiff, counsel for plaintiff offered to counsel for defendant an opportunity for examination upon condition that the latter would call the examining physicians as witnesses whether their findings were favorable or unfavorable to defendant's cause, and defendant's counsel declined the offer, a new trial will not be granted on the ground that the petition for examination was improperly refused.

*New trial—Personal injuries—Excessive damages.*

4. Where the plaintiff, a pedestrian, had been grievously and permanently injured by collision with defendant's automobile in attempting to cross a city street, a verdict of $30,000 was sustained, and rule for new trial dismissed.

Motions for judgment *n. o. v.* and for new trial. C. P. No. 2, Phila. Co., March T., 1920, No. 2747.

*A. T. Ashton,* for plaintiff.

*R. A. Smith* and *Bertram D. Rearick,* for defendant.

BARRATT, P. J., Dec. 28, 1921.—There are two motions before us, one for judgment *n. o. v.,* the other for a new trial.

The motion for judgment *n. o. v.* is based upon contributory negligence of the plaintiff; the motion for a new trial is based upon excessiveness of the verdict.

Upon the motion for judgment *n. o. v.*

At about midnight of Feb. 29, 1920, the plaintiff was crossing Broad Street westerly from the southeast corner of Lehigh Avenue. He testified at the trial that as he was leaving the east sidewalk of Broad Street he looked to the south, from which traffic, if any, would approach, and saw lights of an automobile some 300 feet away; that he then proceeded into the cartway of the east half of Broad Street, and that when some six to eight feet from the centre line of that street, which point is marked by a safety platform dividing Broad Street into two sections for vehicular travel, north and south, he heard

Twinn v. Noble.

a buzzing sound to his left, and, upon looking, he saw approaching him, and within about twenty feet, the lights of an automobile; that he was startled into a momentary stop, and then jumped toward the safety platform and was struck by the oncoming automobile, and that thus the accident happened. He further testified that he was looking both north and west, as well as at the cartway where he was walking, and that the defendant's automobile did not sound a horn.

The only eye-witness to the occurrence was a flour merchant, whose appearance and manner of testifying were quite convincing of his disinterestedness and his accuracy of narration. He testified that, in his automobile, he was approaching Lehigh Avenue on Broad Street from the north, and that when he reached the north side of Lehigh Avenue he made observations for other traffic, both pedestrian and vehicular; that he saw the plaintiff at the regular crossing-place out in the cartway, about two steps from the east curb of Broad Street; that at the same time his attention was attracted to the defendant's automobile because of the great noise that it was making, and that the automobile was then from 150 to 175 feet to the south of the south crossing of Lehigh Avenue, over which the plaintiff was then walking west. "As the two drew very close together, it seemed as if there was a hesitancy partly noticeable in the mind of the man, questioning whether to go ahead or go behind, and in this particular instance he went ahead, and as he went ahead he was struck by the machine."

This is the substance and effect of the evidence upon the part of the plaintiff in respect of the plaintiff's actions from the time he left the curb until he was struck by the defendant's automobile. A motion for non-suit was not made, and the question of contributory negligence was submitted to the jury without an exception thereto being asked for.

We are of opinion that there is no merit whatever in the motion for judgment n. o. v., and it is, therefore, refused.

Upon the motion for a new trial based upon excessiveness of the verdict.

This case was tried in December of last year, 1920; resulted in a verdict in behalf of the plaintiff for $10,000; appeal was taken to the Supreme Court; the lower court was reversed in an opinion filed in May of this year (270 Pa. 500), and a new trial ordered. It was set for trial in this court for Monday, Nov. 14th, of this year. During the period of six months intervening, counsel for defendant did not ask for re-examination of the plaintiff by a physician or physicians until on Thursday, Nov. 10th, four days prior to the time set for trial on Nov. 14th, counsel presented a petition asking leave for re-examinations of the plaintiff. Hearing was fixed for 1 o'clock of the same day. At 1 o'clock it was made known to the court that, instead of counsel for defendant having made any effort whatever to obtain the re-examinations now requested, a claim adjuster of an insurance company concerned in the case had been following the plaintiff with propositions of settlement, without the knowledge of his attorney and over his head, representing that the plaintiff could get immediately $3000 in cash settlement, which was more than could be secured by him if he proceeded to trial. Counsel for the insurance company (as will appear by reading the notes of testimony) admitted that he knew this adjuster of the insurance company, and that the phone number given by that adjuster to the plaintiff was also counsel's phone number, but he declared that he had no part in any negotiations for settlement with the plaintiff over the head of plaintiff's counsel.

The petition for re-examinations was dismissed. The case was called for trial on Nov. 16th. It was on the list for the 14th. Under the rule of court,

1 D. & C.

a case on Monday's list is off for the term unless reached within two days. This two-day rule was relaxed, however, because of the fact that in the preceding week there were two holidays, and the first case upon that week's list extended into the week of the 14th. On the morning of the 14th the trial judge announced that, because of these interruptions, the cases on Monday's list would be taken up at the conclusion of the case then on trial over from the previous week. Counsel for defendant were notified of this temporary setting aside of the two-day rule. That is admitted. The effort then was to have a continuance because of unpreparedness due to witnesses having been sent away by the defendant. One of the counsel for defendant was engaged until Tuesday afternoon in the trial of another case in another court-room. This was given as a reason for defendant's inability to proceed. However, since there was other counsel for defendant, that reason could not prevail under the rule. Motion for continuance was then pressed upon the ground of a *certiorari* having been issued out of the Supreme Court on the disposition of the petition for medical re-examinations. When this ground failed to produce the desired result, counsel for defendant again raised the question of medical re-examinations of the plaintiff. In spite of the court having refused this application, counsel for plaintiff offered to counsel for defendant the re-examination, attaching one condition, namely, that counsel for defendant would call the physician or physicians as witnesses, whether their findings were favorable to the defendant's case or favorable to the plaintiff's case. This offer, though repeatedly made during the trial, was flatly refused by counsel for defendant.

Whether other medical experts would have testified differently from those called concerning the physical results to the plaintiff of the accident had the defendant seen fit to avail himself of the generous offer of counsel for plaintiff, and thus have reduced the amount of the verdict, we cannot tell. Evidently counsel for the plaintiff was not apprehensive of the outcome. We feel that every opportunity that could be reasonably expected under the circumstances was given by the plaintiff to the defendant for further medical or surgical examinations. If production of such additional medical or surgical evidence would have reduced the amount of the verdict, the fault for the failure to produce that evidence is with the defendant, and cannot in fairness and conscience be charged to the plaintiff.

The amount of the verdict was $30,000. That is three times the amount of the former verdict. The question is, should a new trial be granted on the ground that $30,000 is too much? Counsel for defendant reason that the jury arrived at that amount by taking the expectancy of life under the Carlisle Table of a person of the plaintiff's age, which expectancy is thirty-four years; the present value of $1 over that period, $768.93; the weekly earnings of the plaintiff at $40; $768.93 multiplied by forty makes $30,757.20. Counsel for the defendant argue that this is the way in which the jury arrived at the $30,000 verdict.

The error of this method of calculation is, of course, apparent. It does not take into consideration the expenses of treatment in the past, as well as those indicated in the future for operation. It also ignores the item of total loss of earnings of the plaintiff immediately following the accident, as also diminution of earning power over the period from the time that he resumed work after the accident until he stopped work entirely some ten months later. The item of pain, suffering and inconvenience is entirely overlooked. Upon the subject of compensation for loss of earning power, the jury were charged: ". . . and then find the amount of the total gross loss by using what you

believe to be the rate of earning power normally. By normally, I mean what he was able to earn when wages were normal, and not during the time of inflated compensation to electric welders during the war, if those wages were abnormally high at that time. You must take things, of course, as you find them. We all know as common knowledge that artisans in all trades were receiving unusually high wages during the war period, and we equally know that those wages have got to come down, and that they are coming down. Therefore, considering these questions that have to do with earning power, you must get about the normality of the thing to do equal and exact justice."

The jury, it should be said at this point, was above the ordinary. The panel as a whole was of an unusually high grade. They gave several hours' consideration to the case after having retired. We, of course, do not know upon what basis of figures they arrived at their verdict. Under the law they had the power to fix as well the plaintiff's expectancy as his earning power. They may have put his expectancy above the table estimate of thirty-four years, as well as below. They may have taken his earning power at $40 a week, or at less. This was within their province. While they were carefully cautioned against sympathy as influencing any finding that they might reach, they could not help being conscious throughout the trial of the reckless and wanton carelessness of the defendant. In our opinion, the jury reached a fair, reasonable, adequate and just conclusion as to amount. The method of their reaching it, as suggested by counsel for defendant, is not so apparently erroneous as to suggest what probably was in the minds of the jury.

The plaintiff earned in the first employment that he secured upon his discharge from the army, $20 a week. At the time of the accident he was earning $40 a week. A quite moderate average earning, therefore, in view of general reduction of wages, would be $25 a week. His expectancy, according to the table, is thirty-four years. They may readily have reduced it to thirty years. The present value of $1 a week at 5 per cent. is $818.81; at 6 per cent., $736.64. We will assume that they took the lower figure, $736.64.

| | |
|---|---:|
| $736.64 multiplied by twenty-five (dollars a week) ......... | $18,415 |
| Expenses and diminished earning power from accident to December, 1920 (when plaintiff was obliged to quit work, which he has since been unable to resume) .............. | 1,000 |
| Loss of earnings from December of last year to present time, at $40 a week .................................. | 2,000 |
| Pain, suffering and inconvenience in the past, as well as in the future ......................................... | 10,000 |
| | $31,415 |

Our conscience is not shocked at this amount. On the contrary, while it is a substantial sum of money undoubtedly, what is its relative equivalent to the plaintiff for his painful bodily existence and mental torture for the rest of his life? Any sum less than $30,000 we feel would be grossly inadequate in view of the physical wreck that we are convinced the wanton negligence of the defendant has made of the plaintiff.

*Apropos* this subject, it is interesting to note, in passing, an editorial of one of our principal evening papers several days following the rendition of the verdict in this case, and referring specifically to it:

"A verdict for $25,000 was awarded in Common Pleas, Tuesday, to a woman who was knocken down by an automobile as she stepped from the sidewalk at the corner of the Parkway and Summer Street. In another session, a jury

awarded $30,000 to a man who was crippled for life by being struck by a speeding automobile.

•    •    •    •    •    •    •    •    •    •    •    •    •

"Reckless operation of motor-cars in the public streets appears to involve an unusual degree of financial risk. Juries are very apt to reflect public opinion. Not that the members of the jury are influenced by public prejudice or feeling in any particular case, but they are of the people and representative of the people, and naturally the thought which possesses the public mind finds its expression oftentimes in their action.

"Therefore, there is no straining to relate these extraordinary verdicts to the growing sense in the public mind of the wanton conduct of reckless drivers of automobile and motor-trucks, and to the determination that it must be checked. Possibly a rigid application of the law of liability and the assessment of heavy damages to be paid the victims of careless driving may prove as effective as the enforcement of the Criminal Code for such assaults. Yet it is noted that two sentences of imprisonment were meted out last week, one for a year's term and one for thirty days, for irresponsible motor driving.

"If the law shall proceed in this manner to protect the safety of the highways, the speeders may learn caution to a degree in which it never has been and never would be enforced on their minds by $10 fines and reprimands."

While the defendant has presented twenty-two assignments of error, he directed his argument to such of them only as have a bearing upon the matters above discussed, and we will not, therefore, take them up further than to say that, in our opinion, none of them are of sufficient merit to move us either to granting his motion for judgment n. o. v. or for a new trial.

Accordingly, the motion for judgment n. o. v. is overruled and for a new trial is refused.